IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**WESTFIELD INSURANCE COMPANY,**

      Plaintiff,

v.                                                                    Civil Action No. 3:10-CV-70
                                                                                  (BAILEY)

**CARROLL J. CUBBAGE;**
**MVB BANK, INC.; DON T. VIRTS, JR.;**
**BATS GROUP, LLC; WORKFORCE**
**WEST VIRGINIA, UNEMPLOYMENT**
**COMPENSATION DIVISION; and**
**JEFFERSON COUNTY SHERIFF'S TAX OFFICE,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are Defendant MVB Bank, Inc.'s Motion for Summary Judgment [Doc. 32], filed October 4, 2010; and Defendant Carroll J. Cubbage's Cross Motion for Partial Summary Judgment [Doc. 41], filed October 19, 2010. These motions have been briefed and are ripe for decision. The Court has reviewed the record and the arguments of the parties and finds, for the reasons stated below, that Defendant MVB Bank, Inc.'s motion should be **GRANTED IN PART** and **DENIED IN PART**, and that Defendant Carroll J. Cubbage's motion should be **DENIED**.

## BACKGROUND

**I.    Procedural History**

This matter is an interpleader action filed by Westfield Insurance Company ("Westfield") on July 15, 2010 [Doc.1]. Less than five months later, on November 9, 2010,

1

this Court directed Westfield to pay the sum of $449,958.00 to the Court to be deposited into its registry pending determination of the proper party or parties entitled to the proceeds [Doc. 47]. MVB Bank, Inc. ("MVB") and Carroll J. Cubbage ("Cubbage") have now filed cross motions for summary judgment, claiming entitlement to these proceeds.

On October 4, 2010, MVB filed a Motion for Summary Judgment [Doc. 32], claiming entitlement to the full amount of the proceeds. In support of this claim, MVB states that it is the first loss payee on the subject insurance policy, and that it is the first secured lienholder entitled to proceeds from the loss of the insured business personal property. (Id. at 1).

On October 19, 2010, Cubbage filed a Response/Cross Motion for Partial Summary Judgment [Doc. 41]. In response to MVB's motion, Cubbage argues that MVB is not entitled to the proceeds because he is the owner of the subject insurance policy and MVB has no contractual relationship with him. (Id. at 2-3). In addition, Cubbage moves for partial summary judgment, claiming entitlement to the amount of proceeds that represents the business personal property loss coverage. (Id. at 3-4). In support of this claim, Cubbage emphasizes that he was required by lease to carry insurance coverage on his own personal property. (Id.).

On October 27, 2010, MVB filed a Reply/Response [Doc. 42]. In support of its motion, MVB argues that it is irrelevant that Cubbage did not execute any document with the bank because Cubbage named MVB as the first loss payee under his insurance policy. (Id. at 1-2). In response to Cubbage's motion, MVB emphasizes that Cubbage was also required by lease to name the bank as an additional insured under the policy. (Id. at 3-4).

On October 29, 2010, Don T. Virts, Jr. ("Virts"), filed a Response to MVB's motion

[Doc. 44]. Virts informs the Court that MVB conducted a Trustee's sale of the subject property on October 27, 2010, at which the subject property was sold for $35,000.00. (Id. at 1). In this regard, Virts argues that as holder of a deed of trust which is second in line behind MVB's interest, he is entitled to the amount of proceeds in excess of what MVB is owed. (Id. at 2).

## II.     **Undisputed Material Facts**

1.     Bat Group, LLC ("Bat Group"), a West Virginia limited liability company, is the fee simple owner of the following lots or parcels of real estate, together with improvements thereon and appurtenances thereto belonging, situate in Middleway District, Jefferson County, West Virginia, known for postal purposes as 4843 Middleway Pike, Kearneysville, West Virginia 25430 (the "Property"), and more particularly described as follows:

> First Parcel: Lots 15 and 16 as the same are described and delineated on Plat No. 2 of the Charles E. Eubanks lots at Middleway, made by J. Jas. Skinner, S.J.C., dated February 16, 1950, of record in the Office of the Clerk of the County Commission of Jefferson County, West Virginia, in Deed Book 179, at Page 274, to which plat reference is hereby made for a more particular description of said lots; and being two of the lots conveyed to Marshall Burch and Ruby Mae Burch, as joint tenants with the right of survivorship by William C. Dodson, divorced, by deed dated the 28th day of February, 1962, of record in the said Clerk's Office in Deed Book 252, at Page 161, to which deed reference is expressly made and had.

> Second Parcel: Residue Lot 17A as the same is shown and designated on plat of lots 17A and 18A, "Plat No. 2-Charles S. Eubanks Lots," prepared by R. Michael Shepp, L.L.S., dated February 25, 1981, which plat is of record in said Clerk's Office in Deed Book 487, at Page 506, to which plat reference is expressly made and had; and being the residue of Lot 17A, the southwestern portion of Lot 17A having been previously conveyed to Duane M. Burch and Susan Burch by deed dated the 28th day of April, 1981, of record in the said Clerk's Office in Deed Book 487, at Page 503, to which deed reference is expressly made and had; and the souteasternmost portion of Lot 17A is reserved and is not a part of this conveyance. It being the intent of the Grantor to convey only that parcel designated "Residue Lot 17A" on said plat.

(Deed [Doc. 32-2] at 1).

2. Bat Group acquired the property by Deed [Doc. 32-2] dated August 21, 2007, from Donald T. Virts, Jr., and recorded in the aforesaid County Clerk's office in Deed Book 1040, page 410. (Id.).

3. To finance the purchase of this real estate, Bat Group executed a promissory note in the principal sum of $500,000.00 to MVB on August 21, 2007, secured by a first Deed of Trust [Doc. 32-4] on the Property, recorded in the aforesaid County Clerk's office in Deeds of Trust Book 1670, page 45, on August 21, 2007, at 4:31 p.m. (Declaration of Timothy Procita [Doc. 32-2] at ¶ 3).

4. As additional security for the loan from MVB, Bat Group executed an Assignment of Leases and Rents [Doc. 32-5] to MVB, dated August 21, 2007, and recorded in the aforesaid County Clerk's office in Deed Book 1040, page 412, on August 21, 2007, at 4:32 p.m. ([Doc. 32-2] at ¶ 4).

5. As further security for its loan from MVB, Bat Group executed a Commercial Security Agreement [Doc. 32-6] on August 21, 2007, in which Bat Group agreed to provide a security interest to MVB in all accounts, inventory, equipment, instruments and chattel paper, general intangibles, and documents of title. MVB subsequently recorded a UCC-1 Financing Statement [Doc. 32-7] with the West Virginia Secretary of State on August 28, 2007, at 11:30 a.m. The Financing Statement covers all accounts and other rights of payment, all inventory for sale or lease, all equipment, all negotiable instruments, promissory notes, and chattel paper, all general intangibles, and all documents of title. ([Doc. 32-2] at ¶ 5).

6. The aforementioned Financing Statement providing a security interest in all of Bat

Group's accounts, inventory, equipment, instruments and chattel paper, general intangibles, and documents of title is the only UCC-1 Financing Statement on file with the West Virginia Secretary of State's Office. (West Virginia Secretary of State UCC Information System Printout [Doc. 32-13]).

7. As an additional condition of MVB's loan to Bat Group, Bat Group agreed to insure the Property by acquiring full replacement property coverage for $616,000.00 against fire, theft, and liability, with said insurance policy to name MVB as the mortgagee and as the loss payee for all business property. The Agreement to Provide Insurance [Doc. 32-8] dated August 21, 2007, stated that the insurer was St. Paul Travelers. ([Doc. 32-2] at ¶ 6).

8. Virts, the former owner of the Property, retained an interest in the Property by way of a purchase money Second Deed of Trust [Doc. 32-14] from Bat Group in the principal amount of $220,000.00, dated August 21, 2007, and recorded in the aforesaid County Clerk's office in Deed of Trust Book 1670, page 57, on August 21, 2007, at 4:33 p.m.

9. Situate on the property at the time of its acquisition by Bat Group was a retail business and restaurant known as County Roads Market. ([Doc. 32-2] at ¶ 7).

10. Country Roads Market was operated by Carroll Cubbage under a Lease [Doc. 32-9] of the Property and the personal property and equipment from Bat Group, dated July 7, 2009. ([Doc. 32-2] at ¶ 8).

11. Under the Lease, Cubbage was required to pay the monthly installments on the notes to MVB Bank and Virts and to maintain property and casualty insurance coverage on the premises and all the equipment, machinery and personal property of Cubbage incorporated upon and within the premises at its full insurable value or its cost replacement, naming Bat Group and any mortgagee as additional insureds on the policy. ([Doc. 32-9]

at 1, 4-5).

12. Cubbage is a member of Bat Group by virtue of an assignment of interest, dated and accepted on February 12, 2009. ([Doc. 31-15] at 2-3).

13. On May 5, 2010, a fire loss occurred which totally destroyed the structure and contents of the Country Roads Market, located on the Property. At the time of the fire, the business was still under lease from Bat Group to Cubbage. ([Doc. 32-2] at ¶ 10).

14. At the time of the fire loss, the structure and its contents on the Property were insured by Westfield Insurance Company under a Business Owner's Policy [Doc. 45-2] with a policy number of BOP 4 970 325, issued to Cubbage, with a September 30, 2009, to September 30, 2010, policy period. ([Doc. 32-2] at ¶ 10).

15. Under the Declarations [Doc. 32-10] of Westfield's policy, the premises insured was a "Country Store (Grocery)" at 4843 Middleway Pike, Kearneysville, West Virginia 25430, which is the Property, with property loss coverages of $334,000.00 for the building and $100,000.00 for the business personal property. MVB is identified as the only loss payee and mortgagee. ([Doc. 32-2] at ¶ 11).

16. Westfield conducted an investigation into the fire loss, and by letter dated June 18, 2010 [Doc. 32-11], to Cubbage, advised that its investigation was completed and that it was prepared to make payments under the building and business personal property coverages. ([Doc. 32-2] at ¶ 12).

17. In the letter, Westfield advised Cubbage that the building was a total loss and that it was prepared to issue payment for $349,958.00, consisting of the full building coverage limit of $344,000.00, adjusted upwardly by the building limit-automatic increase provision, identified in the Declarations. (Id.).

18.     Westfield also determined that the business personal property loss exceeded the amount of coverage and that it was prepared to issue payment of the $100,000.00 limit of liability under the policy. (Id.).

19.     The letter further advised Cubbage that Westfield intended to file an interpleader action to seek a court's determination regarding who it should pay under the insurance contract. (Id.).

20.     By correspondence dated June 22, 2010 [Doc. 32-12], MVB made its claim to Westfield for payment of the building and personal property coverages under Westfield's policy as the mortgagee and first loss payee. ([Doc. 32-2] at ¶ 13).

21.     MVB's letter advised Westfield that the payoff amount of Bat Group's August 21, 2007, loan was $471,548.16 as of June 21, 2010, with per diem interest accruing at $63.7899. The payoff amount as of October 1, 2010, is $478,552.46. (Id.).

## DISCUSSION

### I. Applicable Standard

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). See **Charbonnages de France v. Smith**, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all

reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. **Anderson**, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. **Celotex Corp. v. Catrett**, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. **Anderson**, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Id.* at 252.

II.  **Analysis**

    A.    **Proceeds from Coverage of Building**

In its motion, MVB claims entitlement to the full amount of the building loss coverage, namely $349,958.00. In response, Cubbage argues that MVB is not entitled to this amount because Cubbage is the insured under the policy and has no contractual relationship with MVB. For the reasons that follow, this Court agrees that MVB is entitled to the above amount as a matter of law.

"A lienholder may not collect on an insurance policy unless the lienholder is specifically named as a loss payee, or unless the lienholder has received an assignment of the policy." **Ohio Farmers Ins. Co. v. Video Bank, Inc.**, 200 W.Va. 39, 43, 488 S.E.2d 39, 43 (1997). "A loss payee under a fire insurance policy is ordinarily looked upon to have a separate contractual right with the insurer. By reason of this contractual right, a lienholder who is named as loss payee on an insurance policy is entitled to the insurance proceeds to the extent of the amount of his debt which is independent of the claim of other lien or judgment creditor." **Fuller v. Stonewall Casualty Co.**, 172 W.Va. 193, 197, 304

8

S.E.2d 347, 350 (1983).

Here, at the time of the fire loss, MVB was the mortgagee of the subject property owned by Bat Group. Country Roads Market, which was situate on Bat Group's property, was operated by Cubbage under a lease of the property from Bat Group. Cubbage maintained property and casualty insurance on the property. The policy contains a loss payable clause for the benefit of MVB, which was in effect at the time of the May 5, 2010, fire which totally destroyed, *inter alia*, the structure of Country Roads Market. That loss payable clause, contrary to Cubbage's assertion, created "a separate contractual right" with Westfield that entitles MVB to the insurance proceeds to the extent of the amount of its debt. *See* **Fuller**, 304 S.E.2d at 350. As of October 1, 2010, the payoff amount on Bat Group's loan was $478,552.46. Therefore, viewing the facts in the light most favorable to the nonmoving parties, the Court finds that MVB is entitled to the full amount of the building loss coverage, namely $349,958.00. Accordingly, MVB's motion is hereby **GRANTED** insofar as it seeks the full amount of proceeds from coverage of the building.

### B. Proceeds from Coverage of Business Personal Property

In its motion, MVB also claims entitlement to the full amount of the business personal property loss coverage, namely $100,000.00. In response, Cubbage argues that MVB is not entitled to this amount because the lease between Cubbage and Bat Group required Cubbage to carry insurance coverage on his own personal property. As such, Cubbage claims entitlement to the full amount of business property loss coverage. For the reasons that follow, the Court finds that a genuine issue of material fact precludes awarding either MVB or Cubbage the full amount of the personal property proceeds.

9

It is undisputed that the Lease required Cubbage to carry personal property insurance coverage on personal property that he owned:

> Lessee shall . . . carry Property and Casualty Insurance adequate in the Lessee's opinion to insure all equipment, machinery and personal property *of the Lessee* incorporated upon and within the Premises in an amount no less than the full insurable value thereof on the replacement cost thereof, whichever is greater.

([Doc. 32-9] at ¶ 11) (emphasis added)..

It is also uncontroverted that Bat Group leased Cubbage "certain items of personal property and equipment," which together with "the real estate" are collectively referred to in the Lease as the "Premises." ([Doc. 32-9] at ¶ 1). Contrary to the assertion of Cubbage, the Lease also required him to insure the leased personal property:

> Lessee shall . . . maintain property and casualty insurance adequate, in the Lessor's opinion, *to insure the Premises* in an amount not less than the full insurable value thereof, or the replacement cost thereof, which is greater.

(Id. at ¶ 11) (emphasis added).

According to the Lease, the items that Bat Group leased to Cubbage are identified in Attachment "B" to the Lease. (Id.). However, the only copy of the lease provided to the Court ends with Attachment "A." (Id. at 12). As such, the Court is unable to ascertain how much of the destroyed personal property was owned by Cubbage and how much was owned by Bat Group (and pledged as collateral to MVB). This is a genuine issue of material fact which precludes granting summary judgment in favor of either Cubbage or Bat Group. Accordingly, Cubbage's motion is **DENIED** and MVB's motion is **DENIED** insofar as it seeks the full amount of proceeds from coverage of the business personal property.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant MVB's Motion for Summary Judgment **[Doc. 32]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**. In addition, the Court finds that Defendant Cubbage's Cross Motion for Partial Summary Judgment **[Doc. 41]** should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** November 12, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE